UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>STEVEN ALEXANDER BOLDEN<br><br>  Defendant. | CASE NO. CR16-320-RSM<br><br>ORDER DENYING DEFENDANT'S AMENDED MOTION FOR COMPASSIONATE RELEASE |

## I.   INTRODUCTION

This matter comes before the Court on Defendant Steven Bolden's Amended Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #70. Plaintiff United States of America ("the Government") has filed a Response opposing compassionate release. Dkt. #72. The Court finds oral argument unnecessary to rule on this motion. Having considered the Motion, the Government's Response, Defendant's Reply, and the remainder of the record, the Court DENIES Mr. Bolden's motion for compassionate release.

## II.   BACKGROUND

Mr. Bolden is a 57-year-old inmate confined at FCI Terminal Island ("Terminal Island"). From 2007 to 2013, Defendant engaged in a scheme that defrauded a program called "Computers for Learning," which was created to transfer extra government computers and equipment to

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 1

qualified schools and non-profits. Dkt. #45 at ¶¶ 7-11. Mr. Bolden posed as a representative of fourteen different non-profits to obtain computer equipment valued at approximately $7.2 million, which he then sold to wholesalers, recyclers, and individual purchasers. He did not report this income on his tax returns. On January 3, 2014, Defendant pleaded guilty to one count of wire fraud, 18 U.S.C. § 1343, one count of filing a false tax return, 18 U.S.C. § 1343, and one count of aggravated identity theft, 18 U.S.C. § 1028A. Dkt. #33. On February 5, 2015, the Court sentenced Defendant to 120 months in custody and 36 months of supervised release. Dkt. #55. This sentence was to run concurrently with a seven-year sentence imposed by the Los Angeles County Superior Court related to an assault Defendant committed against his girlfriend and her daughter. *Id.* at 2; Dkt. #45 at ¶¶ 46-47. Defendant's projected release date is December 19, 2022.

In April and May 2020, Defendant filed inmate requests with the Bureau of Prisons ("BOP") staff for a reduction in his sentence in light of the COVID-19 health crisis. *See* Dkt. #70-1. BOP denied his requests for early release on May 13, 2020. On May 19, 2020, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. #58. Mr. Bolden submitted a second request to BOP staff on June 2, 2020, which BOP again denied. Dkt. #70-2 at 1-2. On May 29, 2020, counsel appointed to represent Mr. Bolden filed the instant Amended Motion for Compassionate Release on June 26, 2020 to substitute the first motion filed pro se by Defendant. Dkt. #70.

Over the past months, public understanding of the COVID-19 virus and its corresponding risks to inmates and staff at BOP facilities has continued to evolve. On June 25, 2020, the U.S. Centers for Disease Control and Prevention updated its guidance, advising that certain populations are at heightened risk of severe complications and/or death if they contract COVID-19. These populations include individuals over the age of 65 and those with chronic medical conditions. *See*

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 2

U.S. Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019-COVID*, *People of any age with underlying medical conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last reviewed July 23, 2020) ("CDC Guidelines").[1] At Terminal Island, 4 inmates and 4 staff have tested positive for COVID-19, 10 inmates have died, and 652 inmates are designated as "recovered." *See* Federal Bureau of Prisons, Covid-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited July 23, 2020).

Mr. Bolden argues that he is entitled to compassionate release because of (1) family circumstances related to his wife's incapacitation; (2) his medical condition; and (3) his age and race, combined with his medical condition and Terminal Island's inability to manage the pandemic, which place him at a higher risk of suffering complications from COVID-19 if he contracts the disease for a second time. Dkt. #70 at 3.

### III.   DISCUSSION

**A. Legal Standards**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended Section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release:

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the*

---

[1] Pursuant to Fed. R. Evid. 201(c)(1), the Court takes judicial notice *sua sponte* of public records related to the COVID-19 health crisis, including documents available through government agency websites. *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *3 (N.D. Cal. Jan. 7, 2014).

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 3

> *defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id*. Here, Parties agree that Defendant has fully exhausted his administrative remedies. *See* Dkt. #70-3 at ¶ 4.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 4

    (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13. Given that Mr. Bolden is 57 years old, only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to his motion. Thus, under the policy statement, Mr. Bolden is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

    Because USSG § 1B1.13 has not been updated since the passage of the First Step Act, district courts nationwide are split on the issue of whether the Commission's list of "extraordinary and compelling reasons" is exclusive and binding on courts. *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release.") (internal quotation marks omitted)). Consistent with the reasoning in *Rodriguez*, several courts in this district have concluded that "the comments to USSG § 1B1.13 do not constrain the Court in evaluating whether the grounds for release articulated by defendant are 'extraordinary and compelling,' but they do provide helpful guidance." *United States v. Powers*, No. CR15-166 TSZ, 2020 WL 3605748, at *1 (W.D. Wash. July 2, 2020); *see also United States v. Locke*, No. CR18-

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 5

0132 RAJ, 2020 WL 3101016, *4 (W.D. Wash. June 11, 2020) ("[T]his Court agrees with the position taken by numerous courts that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reason' warrant a sentence reduction under § 3852(c)(1)(A)."); and *United States v. Grubbs*, No. CR 16-228TSZ, 2020 WL 3839619, at *1 & *2 n.2 (W.D. Wash. July 8, 2020). The Court reaches the same conclusion here that the comments to USSG § 1B1.13 are not exclusive, but nevertheless provide useful guidance.

**B. Extraordinary and Compelling Circumstances**

Defendant bears the burden of establishing that extraordinary and compelling reasons exist that justify compassionate release. *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020). Mr. Bolden claims that he is entitled to release due to (1) family circumstances; (2) medical conditions; and (3) various factors under the "catch-all" provision of the Sentencing Guidelines. The Court will address each of Defendant's arguments in turn. For the reasons set forth below, the Court cannot conclude that extraordinary and compelling reasons warrant Mr. Bolden's early release.

1. <u>Family Circumstances</u>

Mr. Bolden claims that his family circumstances merit compassionate release due to the incapacitation of his wife, Cheryl Bolden, who is also the caregiver of Defendant's minor child. Dkt. #70 at 5. The Sentencing Commission's application notes provide that "extraordinary and compelling reasons" for a sentence reduction exist due to: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver

for the spouse or registered partner." USSG § 1B1.13 cmt. n.1(C). Defendant has failed to demonstrate that either of these conditions are satisfied here.

Because the First Step Act was enacted as recently as December 2018, there is sparse case law addressing the standards a district court should employ when reviewing an inmate's request for compassionate release due to "family circumstances." For that reason, courts have looked to a Program Statement issued by BOP for guidance in reviewing requests based on the incapacitation of a spouse and/or the incapacitation of the family member caregiver. *See, e.g.*, *United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well"); *see also United States v. Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114, at *4, n.49 (D. Alaska Apr. 24, 2020); *United States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019)). Because this statement is non-binding and was issued prior to the onset of the coronavirus, Defendant argues that it is inapplicable here. Dkt. #80 at 4. The Court disagrees. While there is no dispute that the statement is non-binding, the Court nevertheless finds its guidance instructive in determining whether the facts presented here qualify as "family circumstances" that amount to "extraordinary and compelling" reasons warranting compassionate release.

The Program Statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf,at 10. The Program Statement also provides for incapacitation as a result of a "severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 7

or registered partner's mental capacity or function), but may not be confined to a bed or chair." *Id.* It further explains that when evaluating the incapacitation of a spouse, the inmate must provide "adequate information and documentation" including, but not limited to, a statement and verifiable medical documentation regarding the spouse's incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse, and a statement and documentation regarding the inmate's release plan. *Id.*

Regarding requests based on incapacitation of the caregiver to a defendant's minor child, "incapacitation" is defined as "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *Id.* at 7. Again, the guidance states that information and documentation must be provided showing the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan. *Id.* at 7-8.

Here, Mrs. Bolden states that she has multiple medical conditions that impede her life, including bursitis, obsessive compulsive disorder, major depressive disorder, chronic fatigue, chronic sleep apnea, esophageal disease, a nerve injury that causes headaches, chronic anemia, and other diagnoses that are "too many to list here." Dkt. #70-4 at 1. She does not support these diagnoses with verifiable medical documentation. While she provides a summary of benefits letter from the Department of Veterans Affairs rating her disability as 100%, *see* Dkt. #70-5 at 1, Defendant does not meaningfully address the Government's contention that "a service disability rating does not necessarily mean that the individual is unable to care for themselves or to be employed." Dkt. #72 at 9. Mrs. Bolden also states that her daughter previously assisted with caregiving for Mrs. Bolden and Defendant's minor son, but she has since moved out to care for

her own children. *Id.* Again, she provides no supporting letters or documentation beyond her own declaration.

The Court finds that based on the existing evidence, Defendant has failed to demonstrate that his spouse is incapacitated to the extent that she cannot carry on any self-care and is totally confined to a chair or bed. While the record indicates that Mrs. Bolden may benefit from assistance, it appears she is able to move around her house with the assistance of a cane and occasionally commute 30 miles to her job at Edwards Air Force Base. *See* Dkt. #70-4 at 1; Dkt. #69 at 2. For the same reason, it is not clear from the current record that Mrs. Bolden's conditions rise to the level of severity that she is rendered incapable of caring for her and Defendant's minor child. Accordingly, having considered the facts presented in light of BOP's guidance, the Court concludes that Defendant has not demonstrated extraordinary and compelling family circumstances warranting a reduction in his sentence.

Defendant alternatively argues that, even if the Court finds these facts insufficient to comprise "extraordinary and compelling" family circumstances under USSG § 1B1.13 cmt. n.1(C), it should consider these same circumstances under § 1B1.13 cmt. n.1(D)'s catch-all provision. Dkt. #80 at 5 (citing *United States v. Kesoyan*, 2:15-cr-00236-JAM, 2020 WL 2039028 (E.D. Calif. April 28, 2020); *United States v. Riley*, No. 2:12-cr-62, 2020 U.S. Dist. LEXIS 82909 (D. Vt. May 12, 2020)). The Court declines to do so. In both *Kesoyan* and *Riley*, the courts considered defendants' family circumstances under the catch-all provision because the requirements set forth under USSG § 1B1.13 cmt. n.1(C) did not directly apply to their specific situations. Specifically, in *Kesoyan*, the defendant requested compassionate release to care for her child, despite the fact that her developmentally disabled child was twenty-four years old—not a minor—therefore making USSG § 1B1.13 cmt. n.1(C)(i) inapplicable. Likewise, in *Riley*, the

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 9

incapacitated individual was defendant's ailing father, not a spouse or registered partner, therefore making USSG § 1B1.13 cmt. n.1(C)(ii) inapplicable.  Having determined that the conditions set forth under USSG § 1B1.13 cmt. n.1(C) are the appropriate guidance for analyzing Defendant's request for relief, the Court concludes that he has not demonstrated extraordinary and compelling family circumstances warranting a reduction in his sentence.

2. <u>Medical Conditions</u>

Next, Defendant argues that his medical condition constitutes an "extraordinary and compelling" reason that qualifies him for compassionate release.  The Sentencing Commission's application notes to its policy statement offer guidance on medical conditions that may warrant compassionate release. Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13 cmt. n.1(A).

Over the past several months, faced with the rapid spread of COVID-19 through the country's prison systems, many courts have determined that the USSG's "medical condition" criteria are not well-suited to addressing the risk of serious illness or death from COVID-19.  As

a result, courts in this district have considered one or more of the following factors when evaluating a compassionate release request based on the threat COVID-19: (i) whether the inmate is at higher risk because of his or her age and/or race; (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19; (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19; (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease; and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19. *Powers*, 2020 WL 3605748, at *2 (W.D. Wash. July 2, 2020) (collecting cases). Given the "catch-all" provision of the Commission's application notes, *see* USSG § 1B1.13, cmt. n.1(D), as well as the non-binding status of the comments to USSG § 1B1.13, the Court has discretion to consider the above factors. *Id.*

Having considered these factors, the Court concludes that Defendant has not established the level of risk associated with COVID-19 that warrants a sentence reduction. While some courts have recognized the disproportionate impact of COVID-19 on African Americans in granting compassionate release, *see United States v. Anello*, No. 2:12-CR-00131-RAJ, 2020 WL 3971399, at *5 (W.D. Wash. July 14, 2020), Defendant is not in or near the "65 or older" age bracket that places him at high risk of serious illness under the CDC's criteria.[2] *See* CDC Guidelines, *supra*. Regarding his July 17, 2020 hypertension diagnosis, the CDC identifies hypertension and high

---

[2] In considering defendant's race as a factor in analyzing his compassionate release request, the *Anello* court acknowledged that the fact that Mr. Annello is African American may not necessarily elevate his risk of suffering from complications from COVID-19. *See Anello*, 2020 WL 3971399, at *5 ("[T]he CDC suggests that the disproportionate rate of severe outcome is due to complex societal realities related to living and work conditions, unequal access to health care, and underlying health conditions.").

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 11

blood pressure as a condition that "might" increase the risk of severe illness. *See* CDC Guidelines, *supra*. However, Mr. Bolden is currently managing his condition through daily medication, *see* Dkt. #81 at 31, 45, and in light of contradictory evidence as to whether hypertension elevates one's risk from COVID-19, courts have declined to grant compassionate release based on a diagnosis of hypertension where no other high-risk medical conditions are present. *See Powers*, 2020 WL 3605748, at *3, n.7 ("Indeed, the evidence is mixed and multiple studies have reached different conclusions about the COVID-19 risks associated with hypertension."); *see also Rodriguez*, 2020 WL 1627331 at *7 n. 15 (observing that "[t]he relationship between hypertension and elevated risk from COVID-19 is not fully understood" and that some experts have opined that "high blood pressure alone is not a risk factor," but might be of concern when "combined with another underlying health condition.")  None of Defendants' other reported medical conditions—a skin abscess, anxiety and posttraumatic stress disorder, tinnitus (ear-ringing), and a verbal history of a positive tuberculin test—are recognized as risk factors by the CDC. *See* Dkt. #81 at 10, 18.

Furthermore, while Defendant tested positive for COVID-19 on or around April 28, 2020, he does not dispute the Government's contention that "he appears to have been asymptomatic," Dkt. #72 at 9, nor does he provide evidence that he suffered adverse health effects following the positive test. While he argues that a previous COVID-19 infection places him at a higher risk of suffering complications if he contracts the virus again, Dkt. #70 at 9-11, the evidence he relies upon does not support his claim. *See, e.g.*, Parshley, L. *The emerging long-term complications of Covid-19, explained*, VOX, May 8, 2020, https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms; Du, Lisa, *Virus Survivors Could Suffer Severe Health Effects for Years*, BLOOMBERG, May 12, 2020, https://www.bloomberg.com/news/articles/2020-05-12/covid-19-s-health-effects-can-last-long-after-virus-is-gone. Instead, these articles support the more

modest proposition that some patients may suffer long-term and possibly permanent injury from COVID-19. Because Defendant has failed to provide any evidence that he has suffered long-term injury, the Court finds that his argument regarding reinfection "merely raises generalized concerns that do not support a finding of 'extraordinary and compelling reasons' for reducing defendant's sentence." *Powers*, 2020 WL 3605748, at *3 (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)); *cf. Grubbs*, 2020 WL 3839619, at *1 (granting compassionate release for 72-year old "extremely vulnerable" inmate still suffering from lingering effects of COVID-19 infection).

### 3. Additional Factors

Finally, to the extent Defendant cites to general conditions at Terminal Island, such as the high infection rate among prisoners, lack of hygiene, the inability to engage in effective social distancing, and inadequate mask use, *see* Dkt. #70 at 6-8, courts have consistently rejected such generalized arguments as a basis for granting compassionate release. *See, e.g.*, *Riley*, 2020 WL 1819838, at *7 (Finding "extraordinary and compelling" circumstances are not satisfied by "the mere elevated risk of contracting a pandemic virus in prison, even if such a higher risk exists."). Consequently, while the Court does not discount the dangers associated with COVID-19 at a facility like Terminal Island, general conditions that affect inmates indiscriminately throughout the prison are insufficient to support an individual defendant's claim for compassionate release.

Having determined that Defendant has not made the requisite showing of "extraordinary and compelling reasons" for compassionate release, the Court need not analyze whether a reduction in Mr. Bolden's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statement issued by the United States Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A).

//

ORDER DENYING DEFENDANT'S
AMENDED MOTION FOR
COMPASSIONATE RELEASE - 13

## IV.   CONCLUSION

For the reasons set forth above, the court ORDERS:

(1) Mr. Bolden's Amended Motion for Compassionate Release, Dkt. #70, is DENIED.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 27th day of July, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE