1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA

                         Plaintiff,

     v.

STEVEN ALEXANDER BOLDEN

                       Defendant.

CASE NO. CR13-201-RSM

ORDER DENYING DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE

## I.      INTRODUCTION

This matter comes before the Court on Defendant Steven Bolden's Second Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #89. Plaintiff United States of America ("the Government") has filed a Response opposing release. Dkt. #96. The Court finds oral argument unnecessary to rule on this motion. Having considered the Motion, the Government's Response, Defendant's Reply, and the remainder of the record, the Court DENIES Mr. Bolden's second motion for compassionate release.

## II.      BACKGROUND

The full facts of this case are set forth in the Court's previous order denying Defendant's first motion for compassionate release. *See* Dkt. #83. Mr. Bolden is a 58-year-old inmate confined at FCI Terminal Island ("Terminal Island"). From 2007 to 2013, Defendant engaged in a scheme

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 1

1   that defrauded a program called "Computers for Learning," which was created to transfer extra

2   government computers and equipment to qualified schools and non-profits.  Dkt. #45 at ¶¶ 7-11.

3   Mr. Bolden posed as a representative of fourteen different non-profits to obtain computer

4   equipment valued at approximately $7.2 million, which he then sold to wholesalers, recyclers, and

5   individual purchasers.  He did not report this income on his tax returns.  On January 3, 2014,

6   Defendant pleaded guilty to one count of wire fraud, 18 U.S.C. § 1343, one count of filing a false

7   tax return, 18 U.S.C. § 1343, and one count of aggravated identity theft, 18 U.S.C. § 1028A.  Dkt.

8   #33.  On February 5, 2015, the Court sentenced Defendant to 120 months in custody and 36 months

9   of supervised release.  Dkt. #55.  This sentence was to run concurrently with a seven-year sentence

10   imposed by the Los Angeles County Superior Court related to an assault Defendant committed

11   against his girlfriend and her daughter.  *Id.* at 2; Dkt. #45 at ¶¶ 46-47.  Defendant's projected

12   release date is December 19, 2022.

13        Defendant tested positive for COVID-19 on or around April 27, 2020.  From April to June

14   2020, Defendant filed inmate requests with the Bureau of Prisons ("BOP") staff for a reduction in

15   his sentence in light of the COVID-19 health crisis, which the BOP denied.  *See* Dkt. #89-1.  On

16   May 29, 2020, Defendant moved for compassionate release based on family circumstances,

17   medical conditions, and other factors under the "catch-all" provision of the Sentencing Guidelines.

18   Dkt. #70.  On July 27, 2021, this Court denied Defendant's motion on the basis that he failed to

19   demonstrate extraordinary and compelling circumstances warranting compassionate release.  Dkt.

20   #83.

21        On January 15, 2021, Defendant filed another request to BOP seeking a sentence reduction,

22   which the BOP denied.  Dkt. #89-2.  On July 7, 2021, Defendant filed his Second Motion for

23   Compassionate Release with this Court.  Dkt. #89.  Defendant argues that circumstances have

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 2

1   changed since the Court denied his previous motion in 2020.  He notes that although he has

2   received the Johnson & Johnson vaccine, his physical condition has deteriorated following his

3   COVID-19 diagnosis, including two serious cardiac conditions and possible lingering side-effects

4   from the virus.  Defendant also cites to new data indicating his risk of re-infection and how his

5   underlying conditions increase his risk for serious complications.

6                                    **III.     DISCUSSION**

7      **A.  Legal Standards**

8            Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of

9   imprisonment "constitutes a final judgment and may not be modified by a district court except in

10  limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations

11  omitted).  Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i).  Effective

12  December 21, 2018, the First Step Act of 2018 amended Section 3582(c)(1)(A) by adding a

13  provision that allows prisoners to directly petition a district court for compassionate release:

14          (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon*
              *motion of the defendant after the defendant has fully exhausted all administrative*
15          *rights to appeal a failure of the Bureau of Prisons to bring a motion on the*
              *defendant's behalf or the lapse of 30 days from the receipt of such a request by*
16          *the warden of the defendant's facility, whichever is earlier,* may reduce the term
              of imprisonment (and may impose a term of probation or supervised release with
17          or without conditions that does not exceed the unserved portion of the original
              term of imprisonment), after considering the factors set forth in section 3553(a) to
18          the extent that they are applicable, if it finds that—

19          (i) extraordinary and compelling reasons warrant such a reduction; or

20          (ii) the defendant is at least 70 years of age, has served at least 30 years in prison,
              pursuant to a sentence imposed under section 3559(c), for the offense or offenses
21          for which the defendant is currently imprisoned, and a determination has been
              made by the Director of the Bureau of Prisons that the defendant is not a danger to
22          the safety of any other person or the community, as provided under section
              3142(g);

23

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 3

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting amendment under First Step Act). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.* Here, Parties agree that Defendant has fully exhausted his administrative remedies. Dkt. #96 at 9.

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13. Given that Mr. Bolden is 58 years old, only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to his motion. Thus, under the policy statement, Mr. Bolden is entitled to relief if he demonstrates

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 4

1    that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger

2    to the safety of others or the community, and (3) any requested reduction is consistent with the

3    policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

4    **B. Extraordinary and Compelling Circumstances**

5         Defendant bears the burden of establishing that extraordinary and compelling reasons exist

6    that justify compassionate release. *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838,

7    at *7 (W.D. Wash. Apr. 10, 2020).  He argues that his past COVID-19 diagnosis and future

8    likelihood of contracting the virus at Terminal Island, combined with underlying medical

9    conditions, his age and race, and general concerns about the spread and management of COVID-

10   19 in prisons, amount to extraordinary and compelling circumstances.

11        The Sentencing Commission's application notes to its policy statement offer guidance on

12   medical conditions that may warrant compassionate release. Application Note 1 to USSG § 1B1.13

13   provides that "extraordinary and compelling reasons" for a sentence reduction exist when:

14        (A) Medical Condition of the Defendant.

15        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness
          with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability
16        of death within a specific time period) is not required. Examples include metastatic solid-
          tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and
17        advanced dementia.

18        (ii) The defendant is—

19        (I) suffering from a serious physical or medical condition, (II) suffering from a serious
          functional or cognitive impairment, or (III) experiencing deteriorating physical or mental
20        health because of the aging process, that substantially diminishes the ability of the
          defendant to provide self-care within the environment of a correctional facility and from
21        which he or she is not expected to recover.

22   USSG § 1B1.13 cmt. n.1(A).

23

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 5

Faced with the rapid spread of COVID-19 through the country's prison systems, many courts have determined that the USSG's "medical condition" criteria are not well-suited to addressing the risk of serious illness or death from COVID-19.   Courts in this district have considered one or more of the following factors when evaluating a compassionate release request based on the threat COVID-19: (i) whether the inmate is at higher risk because of his or her age and/or race; (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19; (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19; (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease; and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19.  *United States v. Powers*, CR15-166TZZ, 2020 WL 3605748, at *2 (W.D. Wash. July 2, 2020) (collecting cases).   Given the "catch-all" provision of the Commission's application notes, *see* USSG § 1B1.13, cmt. n.1(D), as well as the non-binding status of the comments to USSG § 1B1.13, the Court has discretion to consider the above factors.  *Id.*

Defendant tested positive for COVID-19 in April 2020 and had relatively mild symptoms. Dkt. #90-2 at 2.  On April 6, 2021, he received the Johnson & Johnson vaccine.  *Id*.  He argues that the following medical conditions place him at greater risk of severe illness from COVID-19 and may be indicative of long-term effects of the disease.

i.   Cardiac Conditions

On December 9, 2020, cardiologist Dr. Chenevert diagnosed Defendant with four conditions: hypertension, bifascicular block, arrythmia, and high cholesterol.  Dkt. #90-1.  With respect to his hypertension, Defendant takes three anti-hypertensive medications and "now has

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 6

1    somewhat better control of his blood pressure, although it is still elevated at times." Dkt. #90-2 at

2    1. His bifascicular block is a condition "often associated with structural heart disease" and may

3    progress to high-grade or complete heart block. *Id.* at 2. Regarding Defendant's arrhythmia

4    diagnosis, Dr. Chenevert noted that it may be due to Defendant's anxiety. Dkt. #90-1 at 2.

5                    ii.    Substance Use and Mental Health

6          Defendant also has a history of hash and cocaine use, both of which place individuals at

7    risk for pulmonary issues. Dkt. #71 at 4. He also cites a study linking substance use disorder with

8    more severe outcomes from COVID-19. *See* Dkt. #89 at 20 (citing Nora Volkow, *New Evidence*

9    *on Substance Use Disorders and COVID-19 Susceptibility*, National Institute on Drug Abuse (Oct.

10   5, 2020), https://www.drugabuse.gov/about-nida/norasblog/2020/10/new-evidence-substance-

11   use-disorders-covid-19-susceptibility). Defendant also argues that his compromised mental

12   health, including diagnosed Personality Disorder, Post-Traumatic Stress Disorder, and Anxiety

13   Disorder, place him at higher risk for serious illness or death from COVID-19. *See* Dkt. #71 at 8;

14   Dkt. #90-1 at 2.

15                   iii.   Tinnitus and Latent Tuberculosis

16         Finally, Defendant argues that COVID-19 may exacerbate his underlying medical

17   conditions of tinnitus (ear-ringing) and latent tuberculosis. With respect to tinnitus, Defendant

18   reports that his symptoms worsened after a COVID-19 diagnosis and cites a Web MD article

19   reporting a possible link between COVID-19 and a worsening of the condition. *See* Dkt. #89 at

20   24 (citing *COVID May Cause Tinnitus*, WebMD (Nov. 6, 2020),

21   https://www.webmd.com/lung/news/20201106/covid-may-cause-tinnitus). Regarding his

22   tuberculosis diagnosis, Defendant cites research showing that COVID-19 might activate latent

23   tuberculosis.

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 7

C. **Analysis**

Although Defendant's second motion identifies several medical conditions that may render him more vulnerable to COVID-19, the Court finds that Defendant has not established the level of risk associated with future exposure to COVID-19 that warrants a sentence reduction. Since Defendant filed his first motion for compassionate release last summer, the COVID-19 outlook has improved due to vaccine distribution. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited July 30, 2021) (reflecting vaccination statistics). At Terminal Island, there are currently 16 COVID-positive inmates and 0 positive staff. *Id.* In addition to fewer cases in prisons, courts in this district have rejected arguments for compassionate release based on future susceptibility to COVID-19 in light of the vaccine rollout. *See United States v. Retano*, No. CR18-105-RSL, 2021 WL 2400867, at *4 (W.D. Wash. June 11, 2021) ("According to clinical trials, the J&J/Janssen vaccine is 66.3% effective at preventing laboratory-confirmed COVID-19 illness, it has 'high efficacy at preventing hospitalization and death in people who did get sick,' and '[n]o one who got COVID-19 at least 4 weeks after receiving the J&J/Janssen COVID-19 Vaccine had to be hospitalized.'") (citing *Johnson & Johnson's Janssen*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/janssen.html (June 23, 2021)).

Although Defendant cites several cases where courts granted compassionate release to vaccinated inmates, many courts in this circuit have reached the opposite conclusion. *See, e.g.*, *United States v. Grummer*, No. 08-CR-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. CR16-5535 BHS, 2021 WL

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 8

308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release."); *United States v. Nash*, No. CR-03-00059-001-PHX-JAT, 2021 WL 1969729, at *3 (D. Ariz. May 6, 2021) ("Courts in this circuit have found that a defendant's receipt of the COVID-19 vaccine weighs against granting compassionate release."); *United States v. Cortez*, No. CR-18-00858-01-PHX-SPL, 2021 WL 689923, at *1 (D. Ariz. Feb. 23, 2021) (denying compassionate release because defendant had received vaccine).

Defendant cites to recent reports suggesting that reinfection is possible, particularly in light of the more transmissible Delta variant. However, current studies from the CDC indicate that Defendant's risk of reinfection remains low given both his past infection and vaccination and, furthermore, that vaccination reduces his risk of severe illness.[1]  Dr. Chenevert's letter offers no certainty on this issue, stating that new strains "may be more likely to cause re-infection" and "may be resistant to the various vaccines." Dkt. #90-2 at 3. To the extent that scientific uncertainty regarding the risk of reinfection remains, this uncertainty "cuts against compassionate release" since "the party seeking release bears the burden" of demonstrating extraordinary and compelling circumstances. *United States v. Molley,* 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

Defendant also contends that his worsening tinnitus and recently-diagnosed cardiac conditions may be lingering side-effects from the virus. As an initial matter, the record provides minimal support for Defendant's proposition that COVID-19 caused or exacerbated his conditions.

---

[1] *See* U.S. Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited July 29, 2021); *see also* U.S. Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited July 30, 2021) ("Cases of reinfection with COVID-19 have been reported, but remain rare."); U.S. Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited July 30, 2021) ("[F]ully vaccinated people are much less likely to be hospitalized or die than people with similar risk factors who are not vaccinated.").

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 9

1    Regarding his tinnitus, he relies on a Web MD article generally stating that tinnitus "could be a

2    'long COVID' symptom for some." *COVID May Cause Tinnitus*, WebMD (Nov. 6, 2020),

3    https://www.webmd.com/lung/news/20201106/covid-may-cause-tinnitus.   Likewise, nothing in

4    Defendant's medical records or Dr. Chenevert's letter indicates that his cardiac conditions were

5    caused by his past COVID-19 infection.  Indeed, his motion states that he has "a strong family

6    history of heart disease."   Dkt. #89 at 4.   Furthermore, "[c]hronic but manageable medical

7    conditions alone do not constitute extraordinary and compelling circumstances." *United States* v.

8    *Miller*, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021).  The record

9    reflects that Defendant has been able to effectively manage his conditions while in custody, as

10   evidenced by Dr. Chenevert's letter outlining his treatment for hypertension and bifascicular block.

11   *See* Dkt. #90-2.

12       Finally, to the extent Defendant argues that his risk of COVID-19 could be better

13   minimized if released, the general risks posed by confinement—including communal showers,

14   lack of social distancing, and inadequate mask use—are not sufficient, on their own, to warrant

15   compassionate release.  *See, e.g.*, *Riley*, 2020 WL 1819838, at *7 (Finding "extraordinary and

16   compelling" circumstances are not satisfied by "the mere elevated risk of contracting a pandemic

17   virus in prison, even if such a higher risk exists.").

18       Having determined that Defendant has not made the requisite showing of "extraordinary

19   and compelling reasons" for compassionate release, the Court need not analyze whether a

20   reduction in Mr. Bolden's sentence would be consistent with the factors set forth in 18 U.S.C. §

21   3553(a) and the applicable policy statement issued by the United States Sentencing Commission.

22   *See* 18 U.S.C. § 3582(c)(1)(A).

23   //

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 10

1

**IV.    CONCLUSION**

2        For the reasons set forth above, the court ORDERS:

3    (1) Mr. Bolden's Second Motion for Compassionate Release, Dkt. #89, is DENIED.

4    (2) The Clerk is directed to send a copy of this Order to all counsel of record.

5

6    IT IS SO ORDERED.

7

8        DATED this 30th day of July, 2021.

9

10

11

RICARDO S. MARTINEZ

12                            CHIEF UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

ORDER DENYING DEFENDANT'S SECOND
MOTION FOR COMPASSIONATE RELEASE
- 11